

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 13, 2022

**BY ECF**
Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Okeifa John*, 20 Cr. 477 (ER)
             *United States v. Okeifa John*, 15 Cr. 95 (ER)

Dear Judge Ramos:

    The Government respectfully submits this letter in advance of the January 18, 2022 sentencing of defendant Okeifa John in connection with both his conviction for being a felon in possession of a firearm (the "Conviction") and his violation of a previous term of supervised release (the "Violation"). For the reasons set forth below, the Government respectfully submits that a sentence for Conviction within the Stipulated Guidelines Range of 30 to 37 months' imprisonment, followed by a consecutive sentence for the Violation, would be sufficient but not greater than necessary to serve the purposes of sentencing.

**I.   CRIMINAL HISTORY AND OFFENSE CONDUCT**

    On December 5, 2016, the defendant was convicted in this District upon a plea of guilty of conspiracy to distribute narcotics in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846. (Presentence Investigation Report ("PSR") ¶ 36). He was sentenced to 38 months' imprisonment and three years' supervised release. (*Id.*). The defendant began supervised release on January 28, 2019. (Violation Report at 1.)

    On May 5, 2020, while the defendant on supervised release, the New York City Police Department ("NYPD") received a call that a man had displayed a firearm, entered a black BMW with tinted windows, red seats, and a certain New York license plate, and driven away. Police attempted to stop the car, and the driver—later determined to be the defendant—reversed and collided into another car. He then exited the car and ran from the police for approximately two blocks, before he was stopped and arrested. The NYPD recovered a 9-millimeter SCCY CPX-2 pistol along the route the defendant ran, and surveillance video showed the defendant pausing during the chase and kneeling at the spot where the firearm was recovered.

    In May 2020, the Probation Office submitted a Violation Report to the Court, resulting in an arrest warrant. (Violation Report at 4.) The Report contains eleven specifications: failure to report to his probation officer, four specifications related to the defendant's possession of a firearm

on May 5, 2020, three specifications related to reckless driving, two specifications relating to use of a controlled substance, and providing false information to his Probation Officer.

On July 15, 2020, the defendant was presented in this district for a violation of the terms of his supervised release. (*See* PSR ¶ 5.) On August 11, 2020, he was charged by complaint in this case with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1). On September 14, 2020, date, a grand jury returned an indictment (the "Indictment"), containing the same charge.

## II. GUILTY PLEA AND APPLICABLE GUIDELINES RANGE

On August 10, 2021, the defendant pleaded guilty to the sole count of the Indictment pursuant to a plea agreement (the "Plea Agreement"). (PSR ¶ 3). Count One carries a maximum sentence of 10 years' imprisonment. (PSR ¶ 74).

Pursuant to the plea agreement, the defendant's base offense level under U.S.S.G. § 2K2.1(a)(4)(A) is 20, because defendant committed the instant offense following a conviction for a controlled substances offense. After a three-level decrease for acceptance of responsibility, the defendant's total offense level is 17. (PSR ¶ 4).

Probation calculates the defendant's base offense level under U.S.S.G. § 2K2.1(a)(2) as 24, after concluding that the defendant has two prior felony convictions for controlled substance offenses. (PSR ¶ 23). One of these is a conviction for criminal sale of a controlled substance in the third degree, in violation of N.Y. Penal Law § 220.39, for which the defendant was adjudicated a youthful offender in New York state court. (PSR ¶ 34).[1]

The defendant identifies two reasons why this conviction does not count toward U.S.S.G. § 2K2.1. First, the defendant suggests—but does not press—the argument that the offense does not count as an adult conviction. (Def. Sent. Sub. at 4 n.2.) Second, the defendant argues that New York's statute for criminal sale of a controlled substance in the third degree is not a categorical match for a federal controlled substance offense, because the New York definition of "narcotic drug" criminalizes possession of naloxegol and certain isomers of cocaine, while the federal definition does not. (*Id.* at 4-5.)

The Government believes that the Probation Office has the better of the argument. The youthful offender adjudication counts as an adult conviction because it was a conviction for a felony offense in an adult court, although the defendant did not receive felony sentence for the conviction. *See e.g.*, *United States v. Lesane*, 579 F. App'x 51, 52 (2d Cir. 2014) (citing *United States v. Cuello*, 357 F.3d 162, 167 (2d Cir. 2004)); *see also* U.S.S.G. § 2K2.1 n.1 (defining "felony conviction" to include offenses committed prior to age 18 where classified "as an adult conviction

---

[1] The Government's Plea Agreement identified this conviction in calculating his criminal history, but did not treat it as a controlled substances offense.

under the laws of the jurisdiction in which the defendant was convicted").[2]  Whether naloxegol and the particular isomers of cocaine create a categorical mismatch between the federal and New York definitions of controlled substances is a question pending before the Second Circuit.  *See United States v. Lucas*, No. 19-3937-cr, 2021 WL 3700944, at *4-5 (2d Cir. Aug. 20, 2021) (summary order); *see also* Appellee's Br. at 25-44, No. 19-4071, (2d Cir. June 21, 2021) (arguing that New York law does not, on its face, criminalize the possession with intent to sell naloxegol or isomers of cocaine other than optical and geometric isomers, and there was no reasonable probability that New York would prosecute anyone for those substances).

Although the Government does not dispute the accuracy of the Probation Office's Guidelines calculation, the Government abides by its Plea Agreement, as discussed in further detail, *infra*, and asks the Court to sentence the defendant utilizing the Guidelines range set forth in the Plea Agreement.

The defendant has six criminal history points, including three points from a conviction for a violation of 21 U.S.C. §§ 841 (b)(1)(C) and 846 in a prior case in this district.  *See United States v. Burrell*, 15 Cr. 95 (AJN).  Accordingly, the defendant is in Criminal History Category III.  (PSR ¶ 39).

Pursuant to the Plea Agreement, the Stipulated Guidelines Range is 30 to 37 months.  Probation calculates the Guidelines range as 46 to 57 months.  (PSR ¶ 77).

Following his plea in 20 Cr. 477, the defendant moved to transfer the pending Violations to this Court.  The supervised release specifications remain pending.  At sentencing, the Government anticipates that the defendant will plead guilty to specifications relating to the May 5, 2020 possession of a firearm, and the Government will move to dismiss the remaining specifications.  (*See* Def. Sent. Sub. at 2 (seeking combined sentencing on the Conviction and Violation); Letter Mot. at 1-2, Dkt. No. 41 (seeking consolidation of the cases for sentencing)).  Specification Two is a Class B specification with a Guidelines range of 4 to 10 months' imprisonment.

### III.  DISCUSSION

#### A.  Sentencing Guidelines

The Sentencing Guidelines provide strong guidance to sentencing courts after *United States v. Booker*, 543 U.S. 220 (2005).  Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings.  *Id.* at 49.

---

[2] For this reason, and although it does not affect the Guidelines, the conviction also earns one criminal history point pursuant to U.S.S.G. § 4A1.2(d)(2).  (PSR ¶ 34).

Case 1:20-cr-00477-ER   Document 45   Filed 01/13/22   Page 4 of 6

Page 4

After making that calculation, the Court must consider the factors outlined in 18 U.S.C. § 3553(a), which provides that a sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and sets forth seven specific considerations:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established [in the Guidelines];
>
> (5) any pertinent policy statement [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Second Circuit has recognized that "[i]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States* v. *Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006); *see also Kimbrough* v. *United States*, 552 U.S. 85, 108–09 (2007) ("We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." (quotations omitted)).

### B. Supervised Release

Both the Guidelines and governing case law recognize that the principal purpose of a sentence for a violation of supervised release is "to sanction the violator for failing to abide by the conditions of the court-ordered supervision," in order to account for the breach of trust inherent in refusing the follow the Court's orders. U.S.S.G. Ch. 7, Pt. A(3)(b). Thus, "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited

degree, the seriousness of the underlying violation and the criminal history of the violator." *United States v. Sindima*, 488 F.3d 81, 86 (2d Cir. 2007) (quoting U.S.S.G. Ch. 7, Pt. A(3)(b)).

In determining an appropriate sentence in the context of a violation of supervised release, the factors the Court must consider, as set forth in 18 U.S.C. § 3583(e), are a subset of the factors listed in 18 U.S.C. § 3553(a), specifically, (a)(1)—the "nature and circumstances of the offense and the history and characteristics of the defendant"; (a)(2)(B)—the need to "afford adequate deterrence to criminal conduct"; (a)(2)(C)—the need "to protect the public from further crimes of the defendant"; (a)(2)(D)—the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (a)(4)—the Guidelines range itself; (a)(5)—any pertinent policy statement by the Sentencing Commission; (a)(6)—"the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (a)(7)—the need "to provide restitution to any victims of the offense." 18 U.S.C. § 3583(e); *see United States v. Williams*, 443 F.3d 35, 4748 (2d Cir. 2006).

### C. The Court Should Impose a Sentence Within the Stipulated Guidelines Range, Followed by a Consecutive Sentence for the Violation of Supervised Release

In this case, the nature and circumstances of the defendant's offense, his criminal history, and the need to promote respect for the law, to provide just punishment, to protect the public, and to deter future criminal conduct weigh in favor of a sentence within the Stipulated Guidelines Range of 30 to 37 months' imprisonment, followed by a consecutive sentence of 4 to 10 months for his violation of supervised release. Such a sentence would be sufficient, but not greater than necessary, to serve the purposes of sentencing.

A Guidelines sentence is appropriate to reflect the seriousness of the defendant's conduct, to provide just punishment, and to promote respect for the law. Illegal firearms pose a substantial threat to our communities, and they contribute to a host of other violent crimes. Possession of a firearm by a felon is a particularly serious offense that must be treated as such. "Possession of a gun greatly increases one's ability to inflict harm on others and therefore involves some risk of violence. . . Without possession of guns such persons are far less capable of committing acts of violence. The prohibition of gun possession by previously convicted criminals seeks to protect society by reducing the risk of violence that may result from the possession of guns by persons inclined to crime." *United States v. Dillard*, 214 F.3d 88, 93 (2d Cir. 2000); *see, e.g.*, *United States v. Sapp*, No. 02 Cr. 1065, 2007 WL 1232073, at *3 (E.D.N.Y. Apr. 26, 2007) ("When a felon possesses a gun, the public is put at significant risk. . . . The lengthy sentencing range provided by the Sentencing Guidelines confirms the seriousness of this conduct.").

A Guidelines sentence is also necessary to afford adequate deterrence of criminal conduct of this type. Illegal firearms are unfortunately widespread and are often difficult to detect, and it is important to send a strong message that they have no place in society. *See, e.g.*, *United States v. Levy*, No. 16 Cr. 270, 2017 WL 4381398, at *5 (E.D.N.Y. Aug. 9, 2017) ("[A] substantial sentence in a case involving guns—regardless of the motive of the possessor of the weapon—is the primary means by which the court can communicate to the public that firearms are inimical to

Page 6

the safety of persons living in a densely-populated urban community, and that illegal possession will be severely punished." (citations omitted)).

Finally, the defendant's criminal history and the need to protect the public from future crimes of the defendant weigh in favor of a Guidelines sentence. The defendant committed this offense while on supervised release following a sentence of thirty-eight months for a federal controlled substance offense. A sentence within the Stipulated Guidelines Range will best ensure that the defendant is deterred from future criminal conduct and that the public is protected from him, just as it will help deter others from possessing illegal firearms.

Regarding the defendant's violation of supervised release, the defendant committed a serious breach of the Court's trust. Following his conviction for a federal narcotics felony, the defendant committed another federal felony just over a year following his release from incarceration. The seriousness of that breach requires a separate—that is—consecutive punishment for his violation of supervised release. Additionally, at the end of the defendant's next sentence of incarceration, when the defendant returns to the supervision of the Probation Department, he must be deterred from committing additional crimes and further violating the conditions of his release. And would-be violators must know that such egregious breaches of the Court's trust will be treated with the utmost seriousness.

## IV.  CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the applicable Guidelines range of 30 to 37 months' imprisonment, followed by a consecutive Guidelines sentence for violating supervised release.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by:  _____/s/_____
Andrew A. Rohrbach
Assistant United States Attorney
(212) 637-2345

CC:   Defense counsel (by ECF)